IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 11-00604 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH W. SULLIVAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| JOSEPH W. SULLIVAN, | ) | CV. NO. 12-00560 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING AMENDED MOTIONS UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON
IN FEDERAL CUSTODY AND DENYING CERTIFICATES OF APPEALABILITY**

Before the Court are Defendant/Petitioner Joseph W.

Sullivan's ("Sullivan"):[1] Amended Motion under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody ("§ 2255 Motion"), filed on November 26, 2012 in United

States v. Sullivan, CR 10-00680 LEK, [CR 10-00680, dkt. no. 74;[2]]

_____

[1] Sullivan initiated these post-conviction proceedings pro
se. On June 21, 2013, this Court appointed Andrew Park, Esq., to
represent Sullivan. [Dkt. no. 102.]

[2] The § 2255 Motion is filed both in United States v.
Sullivan, CR 10-00680 LEK, and Sullivan v. United States, CV 12-
00559 LEK-KSC. It is substantively identical to the motion filed
(continued...)

and Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence by a Person in Federal Custody, filed on

November 26, 2012 in United States v. Sullivan, CR 11-00604 LEK,

[CR 11-00604, dkt. no. 36].[3] Plaintiff/Respondent the United

States of America ("the Government") filed its memorandum in

opposition in each case on March 15, 2013.[4] [CR 10-00680, dkt.

no. 94; CR 11-00604, dkt. no. 59.] Sullivan filed his reply in

each case on April 12, 2013. [CR 10-00680, dkt. no. 95; CR 11-

---

[2](...continued)
in both United States v. Sullivan, CR 11-00604 LEK, and Sullivan
v. United States, CV 12-00560 LEK-KSC. As explained, *infra*,
although the motions address two different cases, they address
the same alleged error. Unless otherwise specified, all
citations related to the § 2255 Motion refer to the filing in CR
10-00680. When necessary, this Court will refer to both motions
collectively as "the § 2255 Motions".

[3] Sullivan originally alleged the claim brought in the
§ 2255 Motions as part of a 28 U.S.C. § 2241 petition. [Sullivan
v. Hendershot, CV 12-00204 LEK-BMK, Petition under 28 U.S.C.
§ 2241 for a Writ of Habeas Corpus ("§ 2241 Petition"), filed
4/18/12 (dkt no. 1).] On September 11, 2012, this Court issued
an order construing the first ground in the § 2241 Petition as a
§ 2255 motion and, on October 24, 2012, this Court ordered
Sullivan to file an amended § 2255 motion.

On October 16, 2012, Sullivan also filed a § 2255 motion in
CR 10-00680 and CR 11-00604, but those motions alleged different
grounds than the § 2255 claim he originally raised in the § 2241
Petition. [CR 10-00680, dkt. no. 68; CR 11-00604, dkt. no. 31.]
Sullivan subsequently withdrew the § 2255 motions filed on
October 16, 2012. [CR 10-00680, dkt. no. 72; CR 11-00604, dkt.
no. 34.]

[4] The Government's memorandum in opposition filed in CR 11-
00604 is substantively identical to the Government's memorandum
in opposition filed in CR 10-00680. All references in this order
to the Government's memorandum in opposition refer to the version
filed in CR 10-00680.

00604, dkt. no. 60.]

On September 20, 2013, this Court held an evidentiary hearing regarding a factual issue raised in one of Sullivan's reply memoranda - whether Sullivan gave his counsel in the underlying proceedings an express direction to file notices of appeal in the two cases. Appearing on behalf of Sullivan, who was present, was Andrew Park, Esq., and appearing on behalf of the Government was Assistant United States Attorney Ronald Johnson. At a status conference on September 24, 2013, the parties rested on their written submissions as to the remaining issues in the § 2255 Motions.

After careful consideration of the § 2255 Motions, supporting and opposing memoranda, the evidence presented, and the relevant legal authority, Sullivan's § 2255 Motions are HEREBY DENIED, and a certificate of appealability is also DENIED as to both CR 10-00680 and CR 11-00604, for the reasons set forth below.

## BACKGROUND

On September 30, 2010, a grand jury indicted Sullivan in a two-count indictment in CR 10-00680 for wire fraud, in violation of 18 U.S.C. § 1343. The charges involved the marketing and sale of fraudulent offshore investment products. Sullivan's court-appointed attorney, Thomas Otake, Esq., represented him in the proceedings following the indictment.

3

After his initial appearance, Sullivan was released on bail and required to comply with various conditions of release. One of the conditions was the surrender of all passports and travel documents. Sullivan was also prohibited from applying for or obtaining a passport. [CR 10-00680, Amended Minutes, filed 10/26/10 (dkt. no. 7).] At an October 29, 2010 bail review hearing, the magistrate judge limited Sullivan's travel to the island of Oʻahu. [CR 10-00680, Minutes, filed 10/29/13 (dkt. no. 11).]

Sullivan ultimately pled guilty to both counts of the CR 10-00680 Indictment pursuant to a plea agreement. Sullivan's sentencing was scheduled for September 15, 2011. [CR 10-00680, Minutes, filed 4/29/11 (dkt. no. 37).]

On June 15, 2011, the grand jury indicted Sullivan in CR 11-00604 with one count of making false statements in an application for a United States passport, in violation of 18 U.S.C. § 1542.[5] The alleged offense occurred on or about April 12, 2011, while Sullivan was on pretrial release and before he entered his guilty plea in CR 10-00680. [CR 11-00604, Indictment, filed 6/15/11 (dkt. no. 12).] On July 14, 2011, Sullivan withdrew his plea of not guilty in CR 11-00604 and

_____

[5] Sullivan's initial appearance occurred on June 1, 2011, after the filing of a Criminal Complaint. Mr. Otake was appointed as Sullivan's counsel. [CR 11-00604, Minutes, filed 6/1/11 (dkt. no. 2).]

entered a plea of guilty.  There was no plea agreement.

Sentencing was scheduled for October 27, 2011.  [CR 11-00604,

Minutes, filed 7/14/11 (dkt. no. 19).]  The sentencing in CR 10-

00680 was continued to October 27, 2011, to occur simultaneously

with the sentencing in CR 11-00604.  [CR 10-00680, EO, filed

7/14/11 (dkt. no. 49).]

        The Probation Office issued a Presentence Investigation

Report ("PSR") addressing both cases.  [CR 10-00680, PSR, filed

under seal 11/2/11 (dkt. no. 59).]  The PSR, *inter alia*,

recommended a two-level upward adjustment, pursuant to United

States Sentencing Guidelines ("Guidelines" or "U.S.S.G.")

§ 3C1.1, for obstruction of justice in CR 10-00680 because of the

conduct charged in CR 11-00604.  The PSR explained that Sullivan

attempted to obtain a passport under the name Donald Elbert Allen

("the Allen Passport") with a false birth certificate and a false

State of Hawai`i identification card.  According to the PSR,

Sullivan's total offense level was twenty-four and his criminal

history category was I.  In light of U.S.S.G. §§ 3D1.2 and 3D1.3,

the sentence for CR 11-00604 would be the same as the sentence

for Count 1 in CR 10-00680.

        Sullivan objected to the obstruction of justice

adjustment, arguing that there was no evidence of intent to flee

the jurisdiction and that he was not in custody when he tried to

obtain the Allen Passport.  The Probation Office responded that:

Sullivan did not provide federal agents with a reasonable explanation why he tried to obtain the Allen Passport; Sullivan's only reason was that he believed it would give him peace of mind; the only reason to obtain a passport is to travel abroad; the magistrate judge revoked Sullivan's bail on June 27, 2011, finding that Sullivan was a flight risk; and case law from the Ninth Circuit and other circuits supported the imposition of the adjustment when a defendant obtained a false passport. In addition, the Probation Office responded that attempting to abscond from pretrial release constituted escape from custody pursuant to Ninth Circuit case law.

This Court agreed with the Probation Office's response to Sullivan's objection and found that there was a sufficient basis for the two-level increase. [10/27/11 Sentencing Trans., filed 12/27/12 (dkt. no. 84), at 9.] This Court adopted the recommendation of the PSR, and found that Sullivan's total offense level was twenty-four and his criminal history category was I. This Court noted that the Guidelines sentencing range for the two counts in CR 10-00680 was fifty-one to sixty-three months' imprisonment. This Court also noted that the two counts in CR 10-00680 carried a twenty-year statutory maximum, and the maximum term of imprisonment for the count in CR 11-00604 was ten years' imprisonment. [Id. at 12.] This Court ultimately sentenced Sullivan to, *inter alia*, concurrent terms of fifty-five

months' imprisonment as to each count in CR 10-00680 and the single count in CR 11-00604. [Id. at 38.] Judgment was entered in each case on November 3, 2011. [CR 10-00680, dkt. no. 61; CR 11-00680, dkt. no. 28.]

## I.   **The § 2255 Motions**

In his § 2255 Motions, Sullivan asserts that this Court erred in imposing the obstruction of justice adjustment because the record does not support a finding that he willfully attempted either to obstruct or to impede the prosecution of CR 10-00680 when he attempted to obtain the Allen Passport.[6] Sullivan also argues that this Court should not have imposed the obstruction of justice adjustment because obtaining the Allen Passport while on pretrial release did not constitute escape from custody. According to Sullivan, he did not challenge the obstruction of justice adjustment in a direct appeal because of the ineffective assistance of counsel.

Sullivan's reply in CR 11-00604 raises another issue. The reply appears to suggest that, in an October 29, 2011 telephone call, Sullivan told Mr. Otake that, although Sullivan did not want to file a direct appeal at that time, he wanted to

---

[6] As noted, *supra*, the sentence for the count in CR 11-00604 was determined in the same manner as the counts in CR 10-00680. Thus, the alleged error in the determination of Sullivan's sentence in CR 10-00680 also resulted in the same alleged error in Sullivan's sentence in CR 11-00604. Unless expressly noted, the analysis of Sullivan's claim for relief is identical in the two cases.

do so after they had the chance to discuss other options and the possible grounds for appeal. According to Sullivan, he subsequently attempted to discuss his concerns with Mr. Otake, but Mr. Otake neither took his phone calls, answered his emails, nor came to see him at the detention center. The reply contends that Sullivan was unable to file an appeal because Mr. Otake failed to follow through after the October 29, 2011 conversation.

## II. **Evidentiary Hearing**

At the evidentiary hearing, Sullivan testified that, after his sentencing, he was surprised at the imposition of the obstruction of justice adjustment. He had questions about the sentencing that he wanted to discuss with Mr. Otake, but Mr. Otake did not come to see him, either when he was held in the Marshall's office immediately after the sentencing hearing or when he was returned to the detention center. According to Sullivan, he spoke with Mr. Otake on the phone two days after the sentencing hearing. Sullivan asked Mr. Otake about his options for a possible appeal, and what grounds he could raise in the appeal. Mr. Otake informed Sullivan that he was going out of town for a week, and they would discuss the case when he returned. Sullivan testified that Mr. Otake asked him if he wanted to file an appeal at that time, and Sullivan said no because he wanted to discuss the case with Mr. Otake first.

According to Sullivan, after some time passed, he tried to contact Mr. Otake every day for two to three weeks before he was finally able to speak to Mr. Otake on the telephone. At that time, Mr. Otake said that his obligation to represent Sullivan ended after sentencing. Sullivan testified that, at that time, he believed that, based on Mr. Otake's previous representations, he had one year to file an appeal. Further, if he had known that he only had fourteen days from the entry of judgment to file the notice of appeal, he would have insisted on talking to Mr. Otake before he went out of town.

On cross-examination, Sullivan admitted that he knew the one-year period referred to the deadline to seek an adjustment of his sentence and, at the sentencing hearing, this Court informed him that there was a limited time period in which Sullivan could file any appeal. Sullivan believed that period to be ten to fourteen days.

The Government called Mr. Otake as a witness and submitted two exhibits, which this Court received into evidence. Exhibit 1 is Mr. Otake's Criminal Justice Act ("CJA") compensation claim form, which he submitted to the district court to obtain payment for his services as Sullivan's court-appointed attorney. Exhibit 2 is a list of the hours performed and the descriptions of the services rendered in the course of Mr. Otake's representation of Sullivan. Mr. Otake testified that

he recorded the entries in Exhibit 2 either contemporaneously with the services rendered or the day afterward. He used Exhibit 2 to prepare his CJA form, although he admitted that, in some of his cases, he does not prepare his CJA forms until months after rendering the services in the requests. Both Exhibit 1 and Exhibit 2 state that Mr. Otake met with Sullivan for 0.5 hours on the day of the sentencing hearing, October 27, 2011, and for 1.5 hours the next day, October 28, 2011. During the October 28 meeting, they discussed Sullivan's right to appeal.

Mr. Otake testified that, when he met with Sullivan after the sentencing hearing, they discussed the obstruction of justice adjustment, but Mr. Otake reminded him about the appellate waiver in the plea agreement. Sullivan did not instruct him to file an appeal. Mr. Otake advised Sullivan that an appeal would be a waste of time and that this Court was within its discretion when it imposed the obstruction of justice adjustment. Mr. Otake also warned Sullivan that an appeal could be detrimental to Sullivan. For example, it was possible that, after an unsuccessful appeal, Sullivan could lose some of the benefits in his plea agreement. After the discussion, Sullivan said that he did not want to file an appeal and he wanted to focus on other issues. Sullivan had some ideas about seeking a sentence reduction pursuant to Fed. R. Crim. P. 35 and about seeking a transfer to an east coast correctional facility.

## STANDARD

28 U.S.C. § 2255 states, in pertinent part:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> (b) Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
>
> . . . .

Insofar as this Court held an evidentiary hearing regarding the issue of whether Sullivan expressly instructed Mr. Otake to file a notice of appeal, Sullivan

> must prove by a preponderance of the evidence that he was denied a constitutional right. See Farrow v. United States, 580 F.2d 1339, 1355 (9th Cir. 1978); see also Hearn v. United States, 194 F.2d 647, 649 (7th Cir. 1952). Therefore, to succeed on his motion, Petitioner must prove by a

> preponderance of the evidence that he was provided
> with ineffective assistance of counsel in
> violation of his Sixth Amendment rights.

See <u>Soto-Lopez v. United States</u>, Nos. 07-cr-3475-IEG,

10-cv-1852-IEG, 2012 WL 3134253, at *3 (S.D. Cal. Aug. 1, 2012);

<u>see also</u> <u>Farrow</u>, 580 F.2d at 1355 ("following <u>Johnson v. Zerbst</u>,

[304 U.S. 458, 469 (1938),] the proof of each factor that must be

established at a § 2255 evidentiary hearing into the validity of

the petitioner's prior convictions must satisfy the

preponderance-of-the-evidence standard").

As to the remainder of the issues in the § 2255

Motions, this Court has ruled that an evidentiary hearing is not

necessary.

> A court may deny a § 2255 motion if "it plainly
> appears from the motion, any attached exhibits,
> and the record of prior proceedings that the
> moving party is not entitled to relief." R. 4(b)
> Governing Section 2255 Proceedings. A court need
> not hold an evidentiary hearing if the allegations
> are "palpably incredible or patently frivolous" or
> if the issues can be conclusively decided on the
> basis of the evidence in the record. <u>See</u>
> <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977); <u>see</u>
> <u>also</u> <u>United States v. Mejia-Mesa</u>, 153 F.3d 925,
> 929 (9th Cir. 1998) (noting that a "district court
> has discretion to deny an evidentiary hearing on a
> § 2255 claim where the files and records
> conclusively show that the movant is not entitled
> to relief"). Conclusory statements in a § 2255
> motion are insufficient to require a hearing.
> <u>United States v. Johnson</u>, 988 F.2d 941, 945 (9th
> Cir. 1993). A petitioner must allege specific
> facts that, if true, would entitle him or her to
> relief. <u>See</u> <u>United States v. Rodriques</u>, 347 F.3d
> 818, 824 (9th Cir. 2003) (citing <u>United States v.</u>
> <u>McMullen</u>, 98 F.3d 1155, 1159 (9th Cir. 1996)).

<u>Claxton v. United States</u>, Civ. No. 12-00433 JMS-KSC, 2013 WL
1136704, at *4 (D. Hawai`i Mar. 18, 2013).

<u>**DISCUSSION**</u>

I.   <u>**Procedural Default**</u>

At the outset, this Court must determine if Sullivan's
failure to file a direct appeal from his judgments of conviction
and sentence precludes him from challenging the judgments in the
§ 2255 Motions.  This district court has stated:

> Absent a showing of cause and prejudice, a
> federal habeas petitioner procedurally defaults on
> all claims that were not raised on direct appeal,
> other than claims asserting that the petitioner
> was deprived of effective assistance of counsel.
> <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 504
> (2003); <u>Bousley v. United States</u>, 523 U.S. 614,
> 621-22 (1998); <u>United States v. Frady</u>, 456 U.S.
> 152, 167-68 (1982).  The Supreme Court has
> explained:

>> [T]o obtain collateral relief based on trial
>> errors to which no contemporaneous objection
>> was made, a convicted defendant must show
>> both (1) "cause" excusing his double
>> procedural default, and (2) "actual
>> prejudice" resulting from the errors of which
>> he complains.

> <u>Frady</u>, 456 U.S. at 167-68.

> "'[C]ause' under the cause and prejudice test
> must be something external to the petitioner,
> something that cannot fairly be attributed to
> him." <u>Coleman v. Thompson</u>, 501 U.S. 722, 753
> (1991).  Examples of external factors that
> constitute cause include "interference by
> officials," or "a showing that the factual or
> legal basis for a claim was not reasonably
> available to counsel." <u>Murray v. Carrier</u>, 477
> U.S. 478, 488 (1986).  To show "actual prejudice,"
> a § 2255 petitioner "must shoulder the burden of

13

> showing, not merely that the errors at his trial
> created a possibility of prejudice, but that they
> worked to his actual and substantial disadvantage,
> infecting his entire trial with error of
> constitutional dimensions." <u>Frady</u>, 456 U.S. at
> 170.

<u>Gaitan-Ayala v. United States</u>, Civ. No. 12–00002 JMS–BMK, 2013 WL 958361, at *4 (D. Hawai`i Mar. 12, 2013).  Ineffective assistance of counsel claims, however, are not subject to the procedural bar rule.  <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").  Thus, the portions of the § 2255 Motions alleging ineffective assistance of counsel claims are not procedurally barred.  Sullivan has not identified any other grounds that would constitute "cause" for his failure to file a direct appeal.  This Court therefore concludes that any claims in the § 2255 Motions that do not allege ineffective assistance of counsel are procedurally barred.

## II.  <u>Ineffective Assistance of Counsel</u>

The United States Supreme Court has held that, when defense counsel fails to file an appeal after the defendant expressly instructs him to do so, it is ineffective assistance of counsel *per se*, irrespective of the merits of the appeal the defendant wished to file.  <u>See, e.g.</u>, <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who

14

disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." (citing cases)); <u>Pequero v. United States</u>, 526 U.S. 23, 28 (1999) ("when counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit").

Having considered the testimony and exhibits presented at the evidentiary hearing, and having evaluated the evidence in the context of the record as a whole in CR 10-00680 and CR 11-00604, this Court finds that Mr. Otake's testimony was more credible than Sullivan's testimony. In particular, this Court does not credit Sullivan's testimony that he believed he had up to one year to file his direct appeal. During the sentencing hearing, this Court explained to Sullivan that he had fourteen days from the entry of judgment to file his appeal. [10/27/11 Sentencing Trans. at 41.] Sullivan also admitted in his CR 11-00604 Reply that Mr. Otake advised him on October 29, 2011 that a direct appeal would have to be filed within fourteen days of the sentencing. [CR 11-00604, Reply, Notes on Attorney Thomas Otake's Decl. at 1.] Further, Sullivan admitted during the evidentiary hearing that, when he spoke to Mr. Otake on October 29, 2011, he told Mr. Otake he did not want to file an appeal at that time. This Court therefore concludes that Sullivan has failed to meet his burden of proving, by a preponderance of the

evidence, that his counsel rendered ineffective assistance per se by failing to follow an express request to file a direct appeal from the judgments in CR 10-00680 and CR 11-00604.

Sullivan also makes the related argument that Mr. Otake's failure to challenge the obstruction of justice adjustment on appeal constituted ineffective assistance of counsel. This district court has stated:

> To prevail on an ineffective assistance claim, a § 2255 movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

> Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; see Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

> Even upon showing that counsel's performance is deficient, the petitioner must also show that the deficiency was prejudicial to the petitioner's defense. Id. at 692. Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged

16

deficiencies.  See id. at 697.  In other words, any deficiency that does not result in prejudice necessarily fails.

Gaitan-Ayala, 2013 WL 958361, at *8-9.

First, the Court notes that Mr. Otake did object to the PSR's recommendation to impose the obstruction of justice adjustment.  Mr. Otake raised the same arguments that Sullivan now raises in the § 2255 Motions – that there was no evidence of intent to flee and that Sullivan was not in custody when he tried to obtain the Allen Passport.  Mr. Otake elaborated on those arguments during the sentencing hearing.  He emphasized that there are situations where people obtain passports but never try to leave the country.  Mr. Otake pointed out that, when Sullivan tried to obtain the Allen Passport, Sullivan did not have an airline ticket or flight reservations.  [10/27/11 Sentencing Trans. at 5-6.]  In his rebuttal to the Government's argument, Mr. Otake argued that, although Sullivan had approximately $2,000 in cash when he tried to obtain the Allen Passport, Sullivan also had a deposit slip with him because he was going to deposit the money in a family member's account.  Mr. Otake therefore argued that Sullivan's possession of the money was not evidence of an intent to leave the country.  Mr. Otake also reiterated Sullivan's position that, even though it was not something that other people might take comfort in, Sullivan took comfort from the mere possession of a passport which he did not intend to use.

17

[Id. at 8-9.]  Although this Court ultimately concluded that the adjustment was warranted, this Court's conclusion was not the result of Mr. Otake's failure to raise arguments on Sullivan's behalf.  Having reviewed the record in the underlying proceedings, as well as the submissions addressing the § 2255 Motions, this Court finds that Mr. Otake raised all of the challenges to the obstruction of justice adjustment that Sullivan now brings in the § 2255 Motions.  Sullivan's argument is essentially that Mr. Otake rendered ineffective assistance by failing to revisit those arguments in a direct appeal.

This Court has already found that Sullivan has not proven that he instructed Mr. Otake to file an appeal.  However, even if one assumes that the failure to appeal the obstruction of justice adjustment was objectively unreasonable (despite the absence of the client's direction to do so), Sullivan has not shown that, if the appeal had been filed, it had the reasonable probability of being successful.  See Gaitan-Ayala, 2013 WL 958361, at *9.

First, Sullivan's plea agreement in CR 10-00680 contained a waiver of Sullivan's right to appeal his sentence, except in certain limited circumstances.  [CR 10-00680, Mem. of Plea Agreement, filed 4/29/11 (dkt. no. 38), at ¶ 13.]  Even if the waiver did not apply to an appeal of the obstruction of justice adjustment, Sullivan's intended appeal would have failed

18

on the merits.  U.S.S.G. § 3C1.1 states:

> If (1) the defendant willfully obstructed or
> impeded, or attempted to obstruct or impede, the
> administration of justice with respect to the
> investigation, prosecution, or sentencing of the
> instant offense of conviction, and (2) the
> obstructive conduct related to (A) the defendant's
> offense of conviction and any relevant conduct; or
> (B) a closely related offense, increase the
> offense level by 2 levels.

One example of conduct covered by § 3C1.1 is "escaping or
attempting to escape from custody before trial or sentencing; or
willfully failing to appear, as ordered, for a judicial
proceeding[.]"  U.S.S.G. § 3C1.1, cmt. 4(E); see also
United States v. Yepez, 704 F.3d 1087, 1100 (9th Cir. 2012) (en
banc) (per curiam) ("Commentary in the Application Notes
interpreting or explaining a guideline is authoritative unless it
violates the Constitution or a federal statute, or is
inconsistent with, or a plainly erroneous reading of, that
guideline." (citations and internal quotation marks omitted)),
cert. denied, 133 S. Ct. 2040 (2013).

Sullivan's first argument is that there was no evidence
that he intended to use the Allen Passport to flee the country.
His argument is misplaced.  The issue is not whether he intended
to use the passport to flee, but whether he obtained it
willfully.  If he did so and obtained the passport under a false
name, this Court can reasonably infer that he may have intended
to flee the country.  The Guidelines provide that:

> Unless otherwise specified, . . . adjustments in
> Chapter Three, shall be determined on the basis of
> the following:
>> (1) (A) **all acts and omissions committed,**
>> **aided, abetted, counseled, commanded,**
>> **induced, procured, or willfully caused by the**
>> **defendant;**

U.S.S.G. § 1B1.3(a) (emphasis added).  Further, the commentary to

§ 3C1.1 emphasizes that § 1B1.3(a)(1)(A) applies to the

obstruction of justice adjustment.  U.S.S.G. § 3C1.1, cmt. 9

("Under [§ 1B1.3(a)(1)(A)], the defendant is accountable for the

defendant's own conduct and for conduct that the defendant aided

or abetted, counseled, commanded, induced, procured, or willfully

caused.").  In order to apply for the Allen Passport, on April

12, 2011, Sullivan completed an application at the Downtown Post

Office and presented, as proof of identity, a birth certificate

in the name of Donald Elbert Allen and a State of Hawai`i

identification card in the name of Donald Allen.[7]  He also swore

an oath, signing the name Donald Allen.  These were all willful

actions that Sullivan deliberately took in order to obtain the

Allen Passport, and for which he is accountable pursuant to

§ 1B1.3(a)(1)(A) and § 3C1.1.  Sullivan obtained the Allen

Passport when he knew his conditions of pretrial release in

CR 10-00680 specifically prohibited him from traveling outside of

---

[7] "Donald Allen" was one of the fictitious names Sullivan
used to sign fraudulent investment certificates for his victims.
The application for the Allen Passport was therefore related to
the offenses in CR 10-00680.

the country and from possessing his passport or applying for a
new passport.  [CR 10-00680, Order Setting Conditions of Release,
filed 10/27/10 (dkt. no. 6).]  At the time Sullivan applied for
the Allen Passport, the proceedings in CR 10-00680 were on-going.
The Ninth Circuit has recognized that it is reasonable to infer
that a defendant who applies for a passport under a false name
may have been attempting to flee the country.  United States v.
Donaghe, 924 F.2d 940, 945 (9th Cir. 1991).  Thus, his willful
actions had the potential to obstruct or impede the
administration of justice with respect to the prosecution in
CR 10-00680.

Finally, Sullivan's position that he was not "in
custody" when he attempted to obtain the Allen Passport is wholly
without merit.  The Ninth Circuit has clearly held that pretrial
release constitutes "custody" for purposes of § 3C1.1.  United
States v. Draper, 996 F.2d 982 (9th Cir. 1993) (affirming
imposition of obstruction of justice adjustment where the
defendant failed to return to the community treatment center
where his conditions of pretrial release required him to reside);
see also United States v. Chapman, 64 Fed. Appx. 619, 619 (9th
Cir. 2003) (affirming obstruction of justice adjustment where the
defendant absconded from pretrial custody, resulting in the
failure to appear for sentencing).

This Court therefore finds that the record conclusively shows that Sullivan has not meet his burden to prove that Mr. Otake rendered ineffective assistance by failing to appeal the obstruction of justice adjustment. Nor can Sullivan establish a reasonable probability that, if a direct appeal had been filed, Sullivan would have prevailed on that appeal and succeeded in getting the portion of his sentence attributable to the obstruction of justice adjustment overturned. See Strickland, 466 U.S. at 694. Thus, Sullivan's claim that Mr. Otake's representation was deficient fails because Sullivan was not prejudiced by the lack of an appeal challenging the obstruction of justice adjustment. See Gaitan-Ayala, 2013 WL 958361, at *9.

Sullivan's § 2255 Motions are therefore DENIED.

## III. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because it has denied the sole claim in each of Sullivan's § 2255 Motions, this Court must address whether to grant Sullivan a certificate of appealability in each case.

This district court has recognized that a certificate of appealability

> may issue only if the petitioner "has made a
> substantial showing of the denial of a

22

constitutional right." 28 U.S.C. § 2253(c)(2).

> "The standard for a certificate of appealability is lenient." <u>Hayward v. Marshall</u>, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by* <u>Swarthout v. Cooke</u>, 131 S. Ct. 859 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." <u>Id.</u> (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity but something less than a merits determination." <u>Id.</u> (internal quotation marks omitted).

<u>Claxton</u>, 2013 WL 1136704, at *11.

This Court has carefully reviewed Sullivan's § 2255 Motion and considered the testimony and exhibits presented at the evidentiary hearing, as well as the record in CR 10-00680 and CR 11-00604 as a whole. This Court has found that Sullivan did not establish that his counsel failed to follow an express instruction to file notices of appeal, and this Court cannot find that counsel's failure to challenge the obstruction of justice adjustment on appeal, in the absence of an express instruction to do so, was objectively unreasonable. Further, even assuming, *arguendo*, that the failure to file the appeals was unreasonable, Sullivan cannot establish that it was prejudicial. Thus, Sullivan has failed to prove his ineffective assistance of counsel claims, and any other claims in the § 2255 Motions are procedurally barred. This Court concludes that reasonable jurists would not find this Court's rulings to be debatable.

Accordingly, this Court DENIES issuance of a certificate of appealability as to both CR 10-00680 and CR 11-00604.

**CONCLUSION**

On the basis of the foregoing, Sullivan's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed November 26, 2012 in <u>United States v. Sullivan</u>, CR 10-00680 LEK, and Sullivan's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed November 26, 2012 in <u>United States v. Sullivan</u>, CR 11-00604 LEK, are HEREBY DENIED. Further, this Court also DENIES a certificate of appealability in both cases.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 30, 2013.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA VS. JOSEPH W. SULLIVAN; CR. 11-00604 LEK; JOSEPH W. SULLIVAN VS. USA; CV. 12-00560 LEK-KSC; ORDER DENYING AMENDED MOTIONS UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING CERTIFICATES OF APPEALABILITY**